Counsel, you may begin when you're ready. May I please support, Your Honor? Sudhiri Pandre, for the Providers' Pleasant Care and Affiliates, Your Honor. The first issue that we'll take care in this hearing, Your Honor, would be whether the U.S. District Court are in finding that the Provider Reimbursement Review Board properly affirmed the fiscal intermediaries classification of FICA tax costs as employee-friends' benefits rather than as administrative and general costs. We believe, Your Honor, that the PRRB's decision was arbitrary and capricious and contrary to law and regulations in characterizing the FICA taxes as friends' benefits. Actually, Counsel, isn't the case here that the statute is not clear? The statute delegates the issue to the Secretary. And then you have an issue of what authority some internal communications and letters have versus the role of the Board. Isn't that really what this all boils down to? It does, Your Honor, but I believe that the way in which the Secretary and the Board has interpreted their own regulations, in this case, is contrary to law and jurisprudence. Well, actually, the Foothill-Presbyterian Hospital v. Shalala case indicates that when the statute or regulation is silent, the Court, in quotes, defers to the agency's interpretation unless an alternative reading is compelled by the plain language of the regulation or by other indications of the agency's intent at the time it promulgated the regulation. Do you dispute that? Yes, Your Honor. Okay. Tell me why. First of all, Your Honor, everything will revolve around the definition of what is a friend's benefit and what is covered under that definition, Your Honor. It is clear in their own regulation in PRM Section 2144, which defines what a friend's benefit is, that under that definition, a FICA tax cost is not covered. So that when a FICA tax cost is not considered as a friend's benefit, then it should go and be classified under ANT, under Administrative and General Cost Center. This PRM said, 2144.1, says that a friend's benefits are amounts paid to or on behalf of an employee in addition to direct salary or wages, and from which the employee is or her defendant as defined by the IRS. What you're saying, though, is your interpretation is reasonable. Let's just say we agree your interpretation is reasonable. Let's say that we also agree that the agency's interpretation is reasonable. Under the law, under our law, isn't it true that in such a situation where there are two reasonable interpretations, that we have to defer under Thomas Jefferson University, which is a Supreme Court case, to the agency, and it's not our job, in quotes, to decide which among several competing interpretations best serves the regulatory purpose as long as the agency has spoken? Well, Your Honor, we respectfully disagree with that, Your Honor, because here there is clearly an arbitrariness in the classification of FICA as a friend's benefit. The FICA statute says that it is an excise tax. The jurisprudence that we have cited says that the FICA tax cost is not a friend's benefit, but an excise tax, which is an expense of the whole corporation. Every department in that corporation should bear that cost. That's the concept of this ANG, the ANG. What the secretary and the agency would like us to see is that the definition of the more accurate that they have found in the regulation 42 CFR 41324, that regulation is the basis of their saying that we should allocate the FICA cost because to them that would be, to the employee benefit center being based on salaries, because to them that would be more accurate than allocating it in the ANG. But the nature of an ANG, Your Honor, is that it is, this is an expense that all the departments of the corporation should bear. And FICA being an indirect cost of the corporation, that it should be classified under ANG and be allocated to all the departments, whether or not that department has salaries. Your definition of fringe benefit as being an amount paid to or on behalf of, where does the to or on behalf of come from? What are you quoting? What's that again, Your Honor? Well, you said a fringe benefit has to be paid to or on behalf of an employee. It's based on this Provider Review Manual Section 21. 44.1, Your Honor. In the manual? In the manual of the Secretary.  And one thing more, Your Honor, is that because we are dealing here with the ANG, these administrative and general cost center that the ultimately be a situation, always a situation where there will be arbitrariness in the allocation. Because what they are saying is you allocate first to where they are directly related, because that's to them the most accurate way of doing it. But when you deal with the ANG cost center, Your Honor, and this has been resolved in the case of St. In that case, Your Honor, the Secretary was trying to pull out malpractice insurance costs from the ANG center. And try to put that cost on a different basis of allocation on the theory and the ground that it will, and the new basis of allocation would be the Medicare malpractice experience payout. Because they have found out in that case, Your Honor, that most of the expenses of Medicare malpractice payments are borne by non-Medicare. So the Secretary would like to pull it out and put it in a different basis of allocation. But the court said because it is an ANG, because it is, because the Secretary has established this administrative and general cost center, that all indirect costs of the corporation are pulled into the center. And there will be disproportionate amounts attributed to non-Medicare patients, and there will be another cost more will be attributed to Medicare patients. But the court said in the end it will balance out. But you're still, aren't you still faced with the same problem, though, counsel? You're very articulately stating why your perspective is reasonable and why you think it's right. The agency argues a likewise reasonable approach. And it's the agency. And the Supreme Court says whether we think there's a better way or not, that we have to defer to the agency. Isn't that what the rule is? That's right, Your Honor. But here, they have not followed what they have stated. They said in some CMS letters that the payroll-related taxes, workers' compensation, federal unemployment tax costs. That's not what the board said. That's not what they ruled. I mean, there's some letters back and forth. But in this particular case, the board, it was very clear that the board made the decision that they were going to classify it this way. That's right, Your Honor. But then the arbitrariness comes in because they have classified other payroll-related taxes like, which are similar to FICA tax costs, as to belong in the administrative and general cost center, when there is no basic difference between these payroll-related tax costs with FICA tax costs. What we are saying is because the FUTA and the SUTAs and the workers' comp and FICA are all payroll-related costs of the same nature, they should be classified together. And there is the secretary and the agency has not given us any reason why they would classify SUTA and FUTA and workers' compensation as ANG and not FICA as ANG. And that's where the arbitrariness and the capriciousness lies in, Your Honor. Because what we are saying is that they are even misinterpreting the regulations as set at 42.413.24 as requiring an absolute requirement that there should be an accurate, appropriate allocation of costs in these different cost centers. We mean to say that when you have salaries, those payroll-related salaries should be allocated to where the salaries are incurred, but they are not doing that with FUTA and SUTA and workers' comp costs. They are allocating those costs to the ANG cost center. Counsel, the argument that you just made is an argument that those costs have been misclassified. And the argument that you're making is, well, my costs, in order to be equal to something that's been misclassified, also ought to be misclassified. No, Your Honor, with your respect, no. But these FUTA and SUTA and workers' comp costs being classified in the ANG are correctly classified, Your Honor. But these FICA tax costs being classified under employee benefit center is what we have a problem with. But your argument really comes down to an equal protection argument. It's an equality-based argument, right? Your argument is arbitrary and capricious under the APA because there are other things that look like FICA that have been classified in the ANG. Yes. Now, you don't have an argument really based on the statute or based on some other regulations that the board here misunderstood its regulations or has acted in defiance of the statute in the way in which it's classified this. In other words, if all of the other what you call payroll-based taxes had been lumped into the employee benefits account, you really wouldn't have an argument, would you? That's right. Your real argument is I want this to be treated the way they've treated other things which look like they are deductions from based on salary. That's right, Your Honor. Let me point out to you one case, Your Honor. Saratusa versus the case of Saratusa versus Sialala in 60 F 3rd, 1507. This case, Your Honor, interprets PRM 2144.1, and it says basically that FICA taxes, even when paid on behalf of the employee, are not So that there is more reason to conclude that FICA taxes, when paid by the employee, the FICA share of the employer, are not fenced benefits. And this is according to the case of National Telecoms, Your Honor, this finding of the court trumps the agency decision in this regard. So we believe, Your Honor, that the FICA tax costs should be classified under administrative and general cost center. And for the PRRB to classify this under employee benefits is arbitrary and capricious. For the PRRB and the Secretary to base this, their finding, in the cited regulatory provision of 42 CFR 413.24, there will always be a time where there is going to be always arbitrariness, because what they're saying is you allocate and then classify. But the correct way of doing this, Your Honor, so that there will be no arbitrariness, all costs of the same nature should be classified under indirect cost. And those that are salary based should be classified under salary based and allocated based on that basis, Your Honor. So that if the cost has a benefit to all the departments of the corporation, just like the FICA tax cost being a business tax cost, excise tax for the privilege of maintaining and operating a business, then everyone, every department of the corporation should bear that cost. And that's what we are trying to argue about. And it is the same as this other cost that the Secretary has already conceded to be ANGs. These are the SUTA tax costs, the FUTA and the workers' comp tax costs. The other important issue that I'd like this Court to see also is in that regulation, when, as I said, when you talk about these ANG, and you take out one component from that ANG, as the Court said, in St. James, that you are actually shifting costs from the non-Medicare patients, from Medicare to the Medicare patients, and then you are actually violating the Medicare statute, which requires that you have to pay the reasonable amount for the services that they have to pay for the Medicare patients. Okay. As we may wish to save the remainder of your time for rebuttal. Yes, Your Honor. Let's hear from the government. Good morning, Your Honors. Robert Balderstone on behalf of the Secretary of Health and Human Services. At the outset, I think, Judge Smith, you got it exactly right. This is a fairly broad delegation of statutory authority from Congress to determine reasonable cost reimbursement for these skilled nursing facilities that provide Medicare services. What I think we have here is an attempt by the Secretary's delegate, the Provider Reimbursement Review Board, in the context of administrative adjudication, to deal with an unresolved issue. The statute doesn't tell the Secretary or providers how to deal with this cost. The regulations generally set forth the parameters for the cost reimbursement process and cost finding generally, but whether or not a particular cost is classified in ANG or is classified in the Employee Health and Welfare Cost Center, I think it was a question for the Board to decide. It looks like you've gone back and forth on this question a couple of times. I have gone back and forth? That was a generic you. Okay. Are you referring to the previous decision of the Provider Reimbursement Review Board? Right. Just to kind of back up a little bit, this plaintiff, you know, the testimony before the Board was this plaintiff had always classified these costs as an employee health and welfare cost. Right. That's what they had done historically. I think there's another case pending in D.C. with a different provider that raises the same legal argument, that provider likewise always classified these costs as employee health and welfare. It appears that a Medicare reimbursement consultant started asking their fiscal intermediary, the Secretary's contractor, you know, can I switch this to energy? Is that allowable? And it appears that, yes, there was kind of a, the issue was coming to the attention of the agency and there was an evolving position taken. The initial, you know, the various letters between CMS and their fiscal intermediaries are before the court. Am I correct in understanding that the PRMS Provider Reimbursement Manual, which I think is what Judge Bybee is referring to the various previous interpretations there, I understand that that doesn't have the force of law and in any event is not entitled to the kind of deference that you would arrive at after a formal adjudication or a notice and comment rulemaking, which is what we have here. We have a case, Community Hospital of Monterey Peninsula v. Thompson, I think, that deals with that issue. I think that's exactly right. I mean, in my practice, the Provider Reimbursement Manual is kind of the quintessential interpretive rule. It's something put out by the Secretary to help inform fiscal intermediaries and providers in the cost reimbursement process. It purports to ensure guidance. It does not have the force and effect of law, and in particular, when you're talking about the arena of an administrative adjudication with the Provider Reimbursement Review Board, the Provider Reimbursement Review Board regulations instruct the PRRB to give great weight to secretaries' interpretive guidance, letters, statements of policy, things of that nature. But the PRRB itself, you know, even a lower-level administrative body within the Secretary of Health and Human Services isn't bound to follow the Provider Reimbursement Manual or any of the particular letters that have gone back and forth between CMS and the fiscal intermediaries. The 1998 and 1999 letters, which suggest that FICA ought to go to the A and G, and then we've got a backing away from that, are from Bruce Oliver. Now, is he with HCFA? HCFA, yeah. HCFA was the predecessor agency to what is now the Centers for Medicare and Medicaid Services. Okay. The Provider Reimbursement Review Board is an administrative body within the Department of Health and Human Services. Right. So how is the ranking within the department? Is it between the administrator of HCFA and the board? The Provider Reimbursement Review Board is a five-member panel that I don't want to be prejudiced. It sits as a first cut in terms of who's higher on the ladder here. Does their view trump HCFA? In terms of a letter by an employee of the Centers for Medicare and Medicaid Services, absolutely. Well, this wasn't an employee. This was the director. It wasn't just the employee. No, it was the director of the Division of Cost Reporting for the chronic care purchasing policy. Which one trumps? Who's higher on the ladder here? The Provider Reimbursement Review Board. Okay. So all the board has done is said here, look, we realize we've been back and forth on this question. We've given inconsistent advice in the past. And so this is our opinion clarifying that and telling you what to do with this. And I think the PRB decision on this point was very clear. I mean, these letters, this back and forth between the agency and the provider was before the PRB when it issued its administrative decision. And it said, we understand our mandate to give weight to letters from CMS or interpretive guidance, but these letters seem to represent, in the board's language, an inconsistent point of view, you know, by the same author. And thus, we're not going to afford them any great weight. Pardon me. Well, if I understand the board, it said because these are sort of salary generated amounts, they should be classified along with the employee salaries. Does that mean that the next time the board gets around to it, they'll have to move unemployment compensation and other things like that? I would be excited to argue that case before the board at this point. I mean, I think with these evolving letters and with the development of testimony that's come before the board, I think it is clear now, both in this case, and I mentioned there's another case in D.C. that treats these FICA taxes the same, the agency's point of view is fairly clear that allocating these costs to cost centers on the basis of gross costs, putting them in the administrative general cost center, and then allocating them to all the other various cost centers within the hospital, some of whom might not have any employees at all. Therefore, I think the previous board decisions that the appellant refers to, I think kind of occur in line with this evolving understanding by the agency in terms of what is the appropriate allocation of these costs. I think the next time employee, I'm sorry, the next time workers' compensation and unemployment taxes come before the board, I think it is fair to say the board would have to take a look at the agency's clear statements on this and its most recent decisions on these taxes. Is it arbitrary and capricious for the secretary to maintain those salary-based benefits in two different cost centers at this time? Again... I understand you're hoping that everything will square up in the future. Is it arbitrary and capricious for the secretary to leave FICA where it is, given that these others are still over in the A&G account? In this case, the fiscal intermediary took a look at those previous board decisions regarding unemployment and workers' compensation and effectively laid down the sword before the provider reimbursement review board said, you know, we see these prior decisions, we're going to look at them, we're going to look at them, we're going to leave them here, we don't see a clear direction from the PRB about how to deal with FICA. They made the arguments, in this case they developed the record, they presented record testimony before the board that allocating FICA to the administrative and general cost center then means that those costs get allocated to other cost centers within the provider that don't contain any employee expenses. So I, whether it's arbitrary and capricious, I think needs to be, needs to be looked at. It needs to be understood with respect to the record in this APA case. The board has, you know, taken into account the prior decisions that it's issued and has, I think, more importantly, taken into account the evidence presented in this case supporting its determination that the most accurate allocation of these costs would be to the employee health and welfare center versus the administrative and general cost center. Again, I... What if the board were to get the unemployment compensation question before it and say, no, we think that this belongs in the A and G? Is that decision then arbitrary and capricious? If they get the unemployment and workers' compensation again? And they leave them where they are in A and G, but leave FICA where it is in the employee benefits. Is that, would that be arbitrary and capricious? Again, I... Is there any principle distinction between those types of payments? In terms of what the agency has previously said in terms of the letters and in terms of the general policy that the agency has set forth, it does treat these unemployment workers' compensation and FICA the same because they are payroll-related tax costs. If the board next year, for example, well, it probably won't come up because this group of providers has transferred to a different payment system, but let's say that there is a provider out there with an open appeal and this issue does come up. If the Provider Reimbursement Review Board does issue a decision that treats workers' compensation unemployment as administrative and general expense, then the administrator of CMS, the head of CMS can review that decision of the PRRB. Receive comments from the agency, and I think the agency would point out that the most recent statement of agency policy is clear in terms of the hierarchy of the most accurate classification of these costs, and there would be an opportunity for the secretary in the form of his higher-up delegate, the administrator of CMS, to reverse the Provider Reimbursement Review Board. If, kind of pushing that one step further, if the administrator leaves the decision alone, you know, doesn't want to overturn it for whatever reason, I think we're left back where Judge Smith started. There's a very broad delegation of authority here in terms of the secretary needs to determine the reasonable cost reimbursement for these providers providing services to Medicare beneficiaries. Underneath that, there is a general cost-finding regulation that sets forth the general parameters in terms of accuracy and how you allocate indirect costs to direct costs and then apportion those accordingly. At that third cut, the administrative adjudicatory application of those regulations to the specific records before them, I think reviewing courts would be left to a certain extent on a case-by-case basis. I mean, does the secretary's interpretation of the regulations, that is 482 CFR 413.24 and the desire to arrive at the most accurate classification of these costs, is that supported by the record before the secretary in terms of the testimony and the effect on the cost-reporting effect? And, you know, in this case, there was specifically testimony that for this provider that placing these employee-related tax costs into the administrative and general cost center would then result in those costs being further allocated to other cost centers that don't contain any employee expense. So I realize I was wrong. We have to take almost somebody's word for the fact that, well, somehow it's more accurate to classify it along with the employee's benefits, because unless you understand the whole system, how all the costs work out, you can't tell whether it's more accurate or less accurate. No, I do understand. I understand that kind of general point in terms of being agency counsel that deals with the cost-reporting and dealing with the Byzantine system of Medicare reimbursement, I understand that it's hard to kind of see the forest for the trees. But I think the agency's most recent letter, the August 23, 1999 letter, tries to kind of give some context. From the agency's point of view, the most accurate way to assign these costs would be to link them to the employee that generated them. And by that I mean, let's say I'm a technician in the radiology department. I make $50,000 a year. My contribution, the employer's contribution to FICA is $3,250. And from a Medicare cost standpoint, it is most accurate in terms of what does it cost to have that employee at that provider. There's a $50,000 salary. There's a $3,250 contribution to FICA. Those are costs of having that employee in the radiology department. Slightly less accurate than that would be if a provider doesn't have the accounting sophistication to link up my $50,000 salary with my $3,250 contribution, an alternative method to put it in the employee health and welfare cost center would be to allocate the employer's, all of the employee's share of FICA taxes, all of the employees of the hospital, and allocate those to the various cost centers, radiology, operating room, regular room and board charges, to allocate all of the FICA tax costs to the various cost centers on the basis of gross salaries. Again, what I think the August 23, 1999 letter attempts to make clear is that in that, way less accurate than that would be to place these costs in the administrative and general cost center. The administrative and general cost center, in my mind when I deal with this, usually the kind of quintessential example is patient billing. There's an office in a hospital that deals with billing patients. Some of those go to Mutual of Omaha, some of them go to Medicare, some of them go all over the various provider networks. And that is an administrative and general cost borne by the provider. And those administrative and general costs get allocated to a whole bunch of other cost centers, some of which have to do with employees, some of which have nothing to do with employees. What the secretary thinks is clear is that it's clearly, in terms of that $50,000 employee with a $3,250 employer contribution, if you're looking at how do we get to the costs of having that employee, it's more accurate to put that either with the cost center or on the basis of gross salaries generally. And only if the provider doesn't have the accounting sophistication to do either one of those is Medicare going to allow for and accept a much more rudimentary way of allocating that cost. And that would be to place it in the administrative and general cost center with things like patient billing and scheduling and I don't even know, copy paper, all the other administrative expenses that a hospital incurs and allocate those to all the other cost centers, regardless of whether or not those cost centers have any employees or any employee related expenses in them. Again, I think I went pretty far down the road of explaining the secretary's rationale for why it's more accurate, but kind of going back to the more overarching framework, the Provider Reimbursement Review Board was confronted with a question. What do we do with this plaintiff's request to change the way it had always done this, to put these costs in the employee health and welfare cost center and their desire to place it in the administrative and general cost center? And taking a look at the three buckets that they could put this in, the first one was to say that the way they generated the cost wasn't an option. It wasn't the way the providers had historically done it, and the Medicare program doesn't require providers to kind of rejigger their books. I mean, what Medicare tries to do is take the cost reports as normally kept and submitted by providers of health care services and tries to determine the reasonable cost of Medicare patients attributable to those. Because this provider had not previously elected to directly assign these costs, the cost of the Medicare cost center was kind of a game of which of these two is it more like? Is it more like employee health and welfare costs that then get allocated on the basis of salaries, or is it more like administrative and general costs, like patient billing and overhead, that get allocated totally without regard to whether or not there are any employees in the other cost centers that it gets allocated to? And the second one was to say that the cost of the Medicare cost center was not an option. Again, just touching on the provider reimbursement manual, I know plaintiffs made, spent quite a bit of time in their briefs talking about the provider reimbursement manual and whether or not FICA taxes fit within the definition of a fringe benefit. I'm a federal employee. FICA taxes is withheld from my salary. I don't consider it a fringe benefit of my job in the kind of normal paradigmatic sense in which fringe benefit is used. However, I think we need to keep in mind what the provider reimbursement review board is doing. Fringe benefit just has a meaning within the Medicare cost-finding process. I think the district court, I think Judge Cooper got this exactly right. It matters not what the IRS thinks of FICA tax. It doesn't so much matter what FICA tax is labeled for the purpose of, I presume, many other federal programs. What the provider reimbursement review board has to do is take a look at the definition of a fringe benefit and try to think and establish whether or not this employer's share of FICA taxes is more like a fringe benefit or does it fit in the administrative and general cost center. I think it's much like a fringe benefit. I think your early explanation that it's a fringe cost makes some sense. If the employer doesn't pay it, it has no effect on the worker. The worker gets Social Security. Whether the employer pays this tax or not, the employer may go to jail or have a terrific civil recovery against him. But in that sense, it's really not a benefit to the employer. It is a cost of having an employee. That's correct. And I can see why the board might think that. And in fact, I think the term it used was employee payroll-generated cost. Right. That's exactly right. I think we are in complete agreement, Judge Canby, as far as that goes. I just wanted to point out that the appellant spent quite a bit of time talking about how the FICA tax costs are legally compelled. They can't be thought of as a fringe benefit. And what the Provider Reimbursement Review Board was confronted with was just taking a look at the definition of a fringe benefit and trying to think, does this cost, does it work more like a fringe benefit insofar as it is an amount paid on the behalf of an employee from which the employee or his or her beneficiary derives a personal benefit before or after the employee's retirement or death. I grant you FICA taxes don't strike me as a fringe benefit, but whether or not I get Social Security or whether or not I get Medicare benefits upon my retirement is related to my employment and my employer paying into. I mean, I realize I still get the benefit even if my employer doesn't do it. It's not causally related, but I guess it's sort of. But in conceptually, it functions like a 401k or it functions somewhat like. If you look at the whole national budget, all employer payments, theoretically at least, pay for those benefits. Your Honors, I see my time has run. I respectfully request the decision of the district court affirming the decision will now be affirmed. Thank you. Thank you, counsel. FICA tax costs, Your Honor, can never be a fringe benefit. Because for a fringe benefit, for FICA to be a fringe benefit, this FICA tax cost should be included in the income of the recipients of the employee and they are not. Because these are excise taxes, just like the FUTA and the SUTA and the workers' comp that are considered already by the secretary as to belong in the A&G cost sector. There are all kinds of medical benefits that aren't taxed to the employee, even though they do benefit them. I don't think that's really the test of what's a fringe benefit. I can see an argument that fringe benefit should be of some direct benefit to the employee. But whether or not it's considered income to the employee, it seems to me, is just another question. Health benefits paid by the employer are not taxed to the employee, even though the employee benefits from them. That might be true, Your Honor, but for this FICA tax cost specifically, can never be a, just because it is like the SUTA and the FUTA, that the secretary has already considered to be A&G. If we allocate this FICK, this FICA tax cost, in the employee benefits sector, it's not taxable. It will not be an accurate allocation, Your Honor, because then that will be inconsistent with the nature of the expense. The expense is an indirect cost where all the departments have to bear, and that is precisely what the A&G cost center is, that it is, that you put all of the accumulated cost of all the departments of the corporation, regardless of whether they have salaries or not, and then allocate them based on the patient-medicare utilization ratio. I'd like to discuss for one minute, Your Honor, the... You're over your time, Counselor, you may want to sum up. That's a summation I'd like to say, Your Honor, that it is really an arbitrary and capricious for the PRRB to concede and to accept that these payroll-related taxes, the SUTA and the FUTA, on the one hand, the workers' comp, the other hand, the employees' comp. that are payroll-related are A&G and exclude ICK. They are all of the same nature, Your Honor. Okay. Thank you, Counsel. I'm going to thank both attorneys for the argument. The case is submitted. And with that, the Court is adjourned.
judges: Bybee, Smith, Canby